## Steven Alves's Case.

Suffolk. November 8, 2007. - April 16, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Workers' Compensation Act,* Reimbursement of insurer. *Limitations, Statute of. Practice, Civil,* Statute of limitations.

This court concluded that the Workers' Compensation Trust Fund failed to demonstrate that the reviewing board of the Department of Industrial Accidents was unreasonable in concluding that no statute of limitations applied to a claim filed by an employer (a workers' compensation self-insurer) for reimbursement pursuant to G. L. c. 152, § 37, of compensation paid to its employee for a second injury that occurred while the 1985 version of the statute was in effect. [173-180] Botsford, J., dissenting, with whom Marshall, C.J., and Cordy, J., joined.

Appeal from a decision of the Industrial Accident Reviewing Board.

The Supreme Judicial Court granted an application for direct appellate review.

*Robert L. Quinan, Jr.,* Assistant Attorney General, for Workers' Compensation Trust Fund.

*Jerry E. Benezra* for the employer.

Ireland, J. General Motors Corporation (General Motors), as a workers' compensation self-insurer, compensated Steven Alves for a work-related injury. Because it was Alves's second injury, General Motors was entitled to reimbursement of some of that compensation, pursuant to G. L. c. 152, § 37. The reviewing board of the Department of Industrial Accidents (board) held that there is no statute of limitations applicable to General Motors's filing its claim for reimbursement, where Alves's injury occurred while the 1985 version of the statute was in effect. The Workers' Compensation Trust Fund (Fund) appealed to the Appeals Court. We granted the Fund's application for direct appellate review and now affirm the decision of the board.

*Background and procedure.* In order "to encourage the employment of previously injured persons," *Daly* v. *Commonwealth,* 29 Mass. App. Ct. 100, 101-102 (1990), citing G. L. c. 152, § 37, as appearing in St. 1973, c. 855, §§ 2, 5, the Legislature created a fund to provide some reimbursement to workers' compensation insurers for compensation they pay if such an employee suffers a subsequent injury. The insurer's eligibility for reimbursement does not begin until it pays the first 104 weeks of compensation. St. 1973, c. 855, § 2. General Laws c. 152, § 37, was further amended in 1985. That amendment increased the amount of reimbursement an insurer could recoup from fifty per cent to seventy-five per cent. St. 1985, c. 572, § 48. It also created the Fund. G. L. c. 152, § 65, as appearing in St. 1985, c. 572, § 55. Money for the Fund comes from an assessment on employers. *Id.* See *Daly* v. *Commonwealth, supra* at 103. Most relevant to our purposes is that the 1985 version of G. L. c. 152, § 37, did not contain a statute of limitations on the filing of reimbursement claims by insurers.

In 1991, § 37 was amended again to add a two-year statute of limitations on the filing of claims for reimbursement for injuries occurring after December 23, 1991. St. 1991, c. 398 §§ 71, 111.[1] The Legislature specifically made the amendment to § 37 "substantive," St. 1991, c. 398, § 106, i.e., the changes were to be applied only prospectively. *Austin* v. *Boston Univ. Hosp.,* 372 Mass. 654, 657 (1977). See *Mills* v. *Continental Transp. Network, Inc.,* 44 Mass. App. Ct. 916, 916 (1998), citing G. L. c. 152, § 2A (1991 amendment to G. L. c. 152, § 66, allowing twenty-year statute of limitations on actions against employer, was prospective only).

Steven Alves was employed by General Motors. He suffered a work-related injury within the meaning of G. L. c. 152, § 37, in January, 1987. General Motors began paying reimbursable weekly benefits to Alves on March 10, 1989, ending with a lump-sum payment on March 8, 1991. In April, 2003, General

---

[1] The 1991 statute of limitations is a "rolling statute of limitations." *Walsh* v. *Bertolino Beef Co.,* 16 Mass. Workers' Comp. Rep. 151, 153 (2002) (*Walsh*). See St. 1991, c. 398, § 71 ("Any petition for reimbursement . . . shall be filed no later than two years from the date on which the benefit payment for which the reimbursement request is filed was made").

Motors filed its claim for reimbursement for its payments beginning in March, 1989. It is uncontested that the 1985 version of § 37 applies to the reimbursement claim.

In July, 2003, at a conference before an administrative judge, held pursuant to G. L. c. 152, § 10A, the Fund was ordered to reimburse General Motors.[2] The Fund requested a hearing, which was held before another administrative judge. The Fund argued that a statute of limitations should be read into the 1985 version of § 37 and thus General Motors's claim was time barred.[3] In his written decision of March, 2005, the administrative judge stated that he was bound by the board's decision in *Walsh* v. *Bertolino Beef Co.*, 16 Mass. Workers' Comp. Rep. 151, 153-154 (2002) (*Walsh*), where the exact issue was raised and rejected by the board.[4]

The Fund appealed and the board summarily affirmed the judge's decision, in December, 2005. The Fund appealed to the Appeals Court. G. L. c. 152, § 12 (2).[5]

*Discussion.* As the Fund points out, its appeal focuses on "a discrete legal issue concerning the timeliness of the self-insurer's petition for reimbursement" pursuant to G. L. c. 152, § 37. That "discrete legal issue" involves the validity of the board's interpretation of the 1985 version of § 37. "The interpretation of a statute by the agency charged with primary responsibility for administering it is entitled to substantial deference." *Gateley's Case*, 415 Mass. 397, 399 (1993). The party challenging the board's decision bears a "heavy" burden of proving that the decision is invalid. *Alliance to Protect Nantucket Sound, Inc.* v.

---

[2]The parties had stipulated that General Motors had satisfied all other requirements of G. L. c. 152, § 37.

[3]In its brief the Fund argues that this court should borrow a statute of limitations from either G. L. c. 152, § 41 (four years), or G. L. c. 260, § 3A (three years). It is not clear from the record whether the Fund raised these particular statutes in its argument to the board. We assume however, that these issues were raised where, as discussed *infra*, the board relied on *Walsh*.

[4]The administrative judge also said that the same issue was present in *Oakes's Case, post* 190 (2008), decided today, and the board, as well as a single justice of the Appeals Court, summarily affirmed the administrative judge's decision that an insurer's claim for reimbursement was not time barred.

[5]General Laws c. 152, § 12 (2), permits an appeal to the Appeals Court from a decision of the board pursuant to G. L. c. 30A, § 14, and provides that G. L. c. 30A, § 14 (7) (*e*), does not apply to such an appeal.

*Energy Facilities Siting Bd.*, 448 Mass. 45, 51 (2006), citing *Box Pond Ass'n* v. *Energy Facilities Siting Bd.*, 435 Mass. 408, 412 (2001).

The Fund's argument is premised on the assumption that where a statute does not specify a statute of limitations, courts always borrow one.[6] Because the 1985 version of § 37 contains no statute of limitations, it follows, according to the Fund, that the board erred in not borrowing a statute of limitations. The Fund suggests that the most analogous statutes from which to borrow would be either G. L. c. 152, § 41 (four years), or G. L. c. 260, § 3A (three years).[7]

Although it is true that courts often borrow a statute of limitations when none is supplied, it is not always the case. See *State Bd. of Retirement* v. *Woodward*, 446 Mass. 698, 708 (2006) (no

---

[6]The dissent takes issue with the use of the word "always" twice in this opinion to characterize the assumption on which the Fund's argument for borrowing a statute of limitations is based. *Post* at 184 n.8. In its brief, in the subheading to the discussion of this issue, the Fund states: "In the absence of an express statute of limitations [in § 37], an analogous statute of limitations *must be applied* to an insurer's claim for reimbursement based on the nature or gist of the action" (emphasis added). In addition, the Fund states in it brief, "What no tribunal has done to date, *despite clear direction from this [c]ourt,* is to analyze [the] claims . . . to determine what rule of timeliness should apply when stale reimbursement petitions are filed . . ." (emphasis added).

Moreover, at oral argument the attorney for the Fund made the unqualified statement that it was a legal error for the board to find no statute of limitations because it was not the law of this court. He also stated, without qualification, that if a statute is silent, the court "will identify and supply" one, because the court has rejected the concept that the absence of a statute of limitations means that none applies; and that the court has said it is "duty bound" to supply a statute of limitations where none exists.

As can been seen, the essence of the Fund's argument is that a statute of limitations should be supplied here. The semantics over the characterization of the Fund's argument carries no legal import. As discussed *infra*, the Fund fails to meet its burden of showing that the board's interpretation of the statute is unreasonable. *Massachusetts Med. Soc'y* v. *Commissioner of Ins.*, 402 Mass. 44, 62 (1988).

[7]The Fund does not renew the argument, made before the administrative judge, to borrow the two-year statute of limitations from the 1991 amendment to § 37.

In addition, in a postargument letter, the Fund makes clear that whatever the discussion at oral argument concerning regulations promulgated by the Department of Industrial Accidents, the Fund is not arguing that any regulations bar General Motors's claim for reimbursement pursuant to G. L. c. 152, § 37.

statute of limitations in G. L. c. 32, § 15 [4], because of Legislature's clear expression); *O'Brien* v. *Massachusetts Bay Transp. Auth.*, 405 Mass. 439, 445 (1989) (G. L. c. 260, § 7, tolling statute has unlimited statute of limitations for mentally ill). We also must give substantial deference to the board's interpretation of G. L. c. 152, unless it is incorrect. *Kszepka's Case*, 408 Mass. 843, 846-847 (1990) (board erred in interpreting mandatory language in statute). Moreover, if there is any ambiguity in a statute, "the reviewing board's interpretation of the statute is entitled to our deference." *McCarty's Case*, 445 Mass. 361, 367 (2005), citing *Richards's Case*, 62 Mass. App. Ct. 701, 706 (2004).

As the administrative judge stated in his written decision in this case, the board had already analyzed, in *Walsh*, the statute of limitations issue raised by the 1985 version of the statute. In *Walsh, supra*, the board first quoted the administrative judge at length, whose decision pointed out:

> "Within its various Sections, the statute contains explicit language limiting the period for which certain benefits shall be paid, limitations on when various notices must be filed by employers and insurers, and also contains limitations on the time within which certain claims for benefits must be filed. Thus, the Legislature included specific limitations where it wanted them to be applied — and conversely, excluded them where it did not want limitations to apply. Only in the most arcane and unlikely circumstances would it be necessary or appropriate to find guidance in analogous statutes than within the Workers' Compensation Act itself. . . . [Moreover if] the Legislature felt that the Trust Fund would have been prejudiced in some way that required retroactive application of this [1991] limitations period, then it could have enacted a retroactive limitation on petitions, an action it specifically chose not to do here."

*Id.* at 152.

In its *Walsh* appeal, the Fund urged the board to borrow statutes of limitations, particularly G. L. c. 152, § 41, or G. L. c. 260, § 2. *Id.* at 153-154. The board rejected these arguments for several reasons. It stated that the entire concept of borrowing as it pertains to § 37 had "no bearing on the [*Walsh*] case." *Id.* at 153, citing

*Nantucket* v. *Beinecke*, 379 Mass. 345 (1979). The board relied on the 1991 amendment to § 37 with its explicit prospective application to conclude:

> "To apply this statute of limitations to the 1985 version of § 37 would render the Legislature's prospective characterization of this provision utterly meaningless. Indeed, if the Legislature had intended the new statute of limitations to have retroactive application, 'it would have been natural for the Legislature to express such an intention,' as it did for the vast majority of the amendments enacted in 1991. See St. 1991, c. 398, § 107. Where there is such a plain and rational meaning to be applied, we are obliged to apply it, rather than set off on an interpretive quest. See *O'Brien* v. *M.B.T.A.*, 405 Mass. 439, 443-444 (1989), quoting *Commonwealth* v. *Vickey*, 381 Mass. 762, 767 (1980) ('a basic tenet of statutory construction is to give the words their plain meaning in light of the aim of the Legislature, and when the statute appears not to provide for an eventuality, there is no justification for judicial legislation')."

*Id.* at 154.

Moreover, the board explicitly rejected the Fund's argument that the board should borrow the statute of limitations from G. L. c. 152, § 41, as "meritless," stating that § 41 covers employee claims for *compensation*, whereas § 37 covers claims for *reimbursement*.[8] *Id.* at 154. See *Mills* v. *Continental Transp. Network, Inc.*, 44 Mass. App. Ct. 916, 916 (1998) (rejecting employee's request to borrow statute of limitations from § 41 for G. L. c. 152, § 66, where action was one in tort for damages and not workers' compensation claim). The board also rejected the application of G. L. c. 260, § 2, because it had previously concluded that rights and obligations under § 37 are not contract based. *Id.* at 154, citing *Carmilia* v. *General Elec.*,

---

[8] In its brief the Fund cites *Orekoya* v. *Bank of New England*, 14 Mass. Workers' Comp. Rep. 29, 32 (2000), to support its assertion that G. L. c. 152, § 41, is a valid section from which to borrow a statute of limitations. In *Walsh*, the board analyzed the reason the Fund's reliance on the *Orekoya* case was "unavailing" by stating the reason that borrowing a statute of limitations was appropriate in the *Orekoya* case but not apt in the *Walsh* case. *Walsh*, *supra* at 154. The Fund does not address the board's specific analysis of the *Orekoya* case and thus does not explain how that analysis is unreasonable.

15 Mass. Workers' Comp. Rep. 261, 275 (2001).[9] See *Ahmed's Case*, 278 Mass. 180, 184 (1932) (workers' compensation act "creates rights and remedies and procedures all its own, not previously known to the common or statutory law").

Although it is outside the record in this case, we note that the Fund appealed from the *Walsh* decision to a single justice of the Appeals Court. The appeal was dismissed because the Fund and the insurer settled.

We will not substitute our judgment for that of an administrative agency if its interpretation of a statute is reasonable. *Massachusetts Med. Soc'y* v. *Commissioner of Ins.*, 402 Mass. 44, 62 (1988). In its singular focus on its premise that the board erred in *Walsh* because courts *always* borrow a statute of limitation where none is indicated, the Fund does not explain how the board's interpretation of the 1985 version of the statute, including the board's rejection of borrowing from other statutes, is *unreasonable*.[10] Thus the Fund has not met its heavy burden in this case.

---

[9]Even though the *Walsh* decision discussed borrowing from G. L. c. 260, § 2, and here the Fund advocates borrowing from G. L. c. 260, § 3A, the Fund does not explain how the board's rejection of this particular statute is unreasonable. General Laws c. 260, § 3A, applies to claims against the Commonwealth pursuant to G. L. c. 258, the Massachusetts Torts Claims Act. General Laws c. 152 was designed to replace tort actions. *Walker's Case*, 443 Mass. 157, 161 (2004), quoting *Neff* v. *Commissioner of the Dep't of Indus. Accs.*, 421 Mass. 70, 75 (1995) (purpose of workers' compensation act to allow workers, who give up their right to sue employers in tort, to recover for injuries). Although the dissent, *post* at 189 n.13, states that it would apply the statute of limitations of the Torts Claims Act, the holding in *Walker's Case*, *supra*, illustrates the problem with doing so. Moreover, here, as stated *supra*, we are not focusing on an employee's claim for compensation, but the insurer's claim for reimbursement for monies paid to the employee.

[10]One of the cases on which the Fund relies for its proposition that the board should have borrowed a statute of limitations, *Nantucket* v. *Beinecke*, 379 Mass. 345 (1979), was discussed and explicitly rejected in the *Walsh* decision. The Fund offers no analysis concerning why the board's rejection of this case was unreasonable. In addition, of the other cases the Fund cites that discuss borrowing statutes of limitations, only *State Bd. of Retirement* v. *Woodward*, 446 Mass. 698 (2006), concerns an agency's interpretation of a statute. In the *Woodward* case, the court upheld the board of retirement's interpretation of G. L. c. 32, § 15 (4), because the provision contained clear language supporting its decision that forfeiture proceedings are not subject to any statute of limitations. *Id.* at 708. Here, the board relied on an explicit provision in the 1991 amendment to § 37 to discern how the Legislature

It is not unreasonable for the board to conclude that incorporating any statute of limitations into the 1985 version of the statute renders meaningless the prospective nature of the 1991 amendment. "[I]f possible a statute is to be interpreted in harmony with prior enactments to give rise to a consistent body of law." *Hadley* v. *Amherst*, 372 Mass. 46, 51 (1977), citing *Everett* v. *Revere*, 344 Mass. 585, 589 (1962) (court's "interpretation results in a harmonious body of law and explains the subsequent enactments"). Cf. *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 193-194 (1976) (Legislature's failure to enact proposed bill amending G. L. c. 151B was "hazardous basis" on which to infer intent of earlier version of statute). It also is not unreasonable for the board to have concluded that, in expressly adding a prospective statute of limitations, the Legislature manifested its intent that

intended the board to interpret the 1985 version of the statute. The Fund fails to explain how that interpretation is unreasonable and why it should not be accorded deference. Cf. *Locator Servs. Group* v. *Treasurer & Receiver Gen.*, 443 Mass. 837, 858-861 (2005) (appeal from judge's denial of motion for summary judgment; court looked to other sections of relevant statute for statute of limitations as well as to similar statutes of limitations in tort and contract actions against Commonwealth); *Oliveira* v. *Pereira*, 414 Mass. 66, 72-73 (1992) (appeal from judge's decision that claim pursuant to G. L. c. 21E was time barred; statute sounded in tort, where terms such as foreseeability and joint and several liability were used, and therefore, tort statute of limitations applied); *Boston* v. *Gordon*, 342 Mass. 586, 590-591 (1961) (appeal from judgment for defendant pursuant to real estate tax collection statute amended to omit statute of limitations; court applied statute of limitations of previous version of statute where reasons for change were obscure).

Moreover, the workers' compensation cases to which the Fund refers in its postargument letter are distinguishable. Two cases involve statutes of limitations for actual actions filed in court, *Pina* v. *Liberty Mut. Ins. Co.*, 388 Mass. 1001, 1001-1002 (1983) (employee had three years to commence action against third-party tortfeasor pursuant to G. L. c. 152, § 15); *Mills* v. *Continental Transp. Network, Inc.*, 44 Mass. App. Ct. 916 (1998), and cases cited (before 1991 amendment to G. L. c. 152, § 66, plaintiff had to maintain action in tort for damages stemming from 1990 injury where employer did not maintain requisite workers' compensation insurance; employee bound by three-year statute of limitations set forth in G. L. c. 260, § 2A). See L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation §§ 26.6, 27.1 et seq. (3d ed. 2003). The other case on which the Fund relies, *Richards's Case*, 62 Mass. App. Ct. 701, 708 & n.17 (2004), addresses the issue of a statute of limitations applicable to G. L. c. 152, § 11D (3), only in dicta, as the insurer never sought an order pursuant to the statutory provision and thus it was not an issue in the case.

the 1985 version of the statute have no statute of limitations. *Walsh, supra* at 153. Cf. *Ferguson* v. *Commissioner of Corps. & Taxation*, 316 Mass. 318, 323 (1944) (court will not read discriminatory tax provision into statute where Legislature has not provided "any indication of an intention so to discriminate"). In addition, it is not unreasonable to conclude that the board's interpretation is in keeping with the purpose of § 37 (facilitating the rehiring of injured workers) by making sure that insurers are reimbursed. Our conclusion is consistent with this "remedial statute," *Walker's Case*, 443 Mass. 157, 161 (2004), where the Legislature anticipated that second injuries caused more serious disabilities. *Daly* v. *Commonwealth*, 29 Mass. App. Ct. 100, 102 (1990). See *School Comm. of Wellesley* v. *Labor Relations Comm'n*, 376 Mass. 112, 116 (1978), quoting *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 850 (1977) (agency's interpretation of statute given deference "particularly 'where [it] must interpret a legislative policy which is only broadly set out in the governing statute' ").

The Fund argues that concluding that no statute of limitations applies to the 1985 version of the statute would cause present employers to be assessed unfairly for the costs of reimbursements and benefit those employers who went underassessed in the 1985-1991 period. We do not consider this argument because, as the Fund concedes, there is nothing in the record indicating that this issue was raised before the board and no evidence that it is true.[11]

We are aware that the board's interpretation of the statute results in insurers that made payments for injuries that occurred between 1985 and 1991 having an unlimited time to file claims for reimbursement pursuant to § 37, whereas insurers who pay for injuries sustained after 1991 only have two years in which to file for reimbursement. However, the Legislature is presumed

---

[11]The Fund cites four cases involving § 37 pending in the Appeals Court.

We also note that, according to the plain language of G. L. c. 152, § 65 (3), insurers, such as General Motors, must inform the Fund each year of losses paid under G. L. c. 152 in the previous twelve months. The Fund makes no charge, nor is there any evidence in the record, that General Motors did not fulfil its statutory duty. The Fund does not address how its argument is affected by the incorporation of General Motors data in the annual assessment of employers pursuant to G. L. c. 152, § 65 (3) and (4) (*d*), as appearing in St. 1985, c. 572, § 55.

to intend and understand all the consequences of its actions. *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 583 (1994). Inconsistencies are for the Legislature to remedy. See *Louis's Case*, 424 Mass. 136, 142-143 (1997) (legislative amendments to G. L. c. 152, § 35, created differing benefits for workers injured at different times; inconsistency requires legislative attention). In addition, because we presume that the Legislature is aware of the 2002 decision by the board in *Walsh* (a presumption not addressed by the dissent) and has not acted to amend the statute, we cannot state that the board's continual reliance on its holding in *Walsh* is unreasonable. *McCarty's Case*, 445 Mass. 361, 366 (2005) (Legislature presumed to be aware of reviewing board decisions). See *Nelson* v. *Neles Jamesbury, Inc.*, 16 Mass. Workers' Comp. Rep. 172, 173 (2002) (quoting analysis in *Walsh* case to reject Fund's argument that board should borrow statute of limitations for 1985 version of G. L. c. 152, § 37).[12]

*Conclusion.* For the reasons set forth above, the Fund has not met its burden to show that the board's interpretation of the statute is unreasonable. Accordingly, we affirm the board's decision.

*So ordered.*

BOTSFORD, J. (dissenting, with whom Marshall, C.J., and Cordy, J., join). The court today in effect holds that, while all employees who have suffered or suffer second injuries must file for compensation within four years,[1] and insurers who have compensated employees for post-1991 second injuries must file for reimbursement within two years of the payments for which they seek to be reimbursed,[2] insurers who have compensated employees for second injuries occurring during the six-year period

---

[12]Pursuant to G. L. c. 152, § 12A, the insurers request reasonable costs for "attorney's fees, briefs, and other necessary expenses" in connection with this appeal. The statute mandates that we grant the request. Pursuant to the procedure set forth in *Fabre* v. *Walton*, 441 Mass. 9, 10 (2004), counsel should file with the clerk of the Commonwealth a submission detailing and supporting the request for the statutory fees and costs. The submission should be filed within thirty days of the date the rescript issues. The Fund may file a response to the submission within thirty days of the insurers' filing.

[1]See G. L. c. 152, § 41.

[2]See G. L. c. 152, § 37, as appearing in St. 1991, c. 398, §§ 71, 106.

between 1985 and 1991 have an unlimited time in which to seek reimbursement. The court reaches this result on the ground that it should defer to the determination reached by the reviewing board (board) of the Department of Industrial Accidents (department). *Ante* at 174-175, 177. In doing so, the court in my view has misapplied the general principle of deference to administrative agency decisions. Because I can discern no clear indication of a legislative intent to provide an indefinite reimbursement period to these insurers for the time period at issue, I respectfully dissent.

1. *Scope of review of agency action.* At issue in this case is the proper interpretation of what have been known as the "Second Injury Fund"[3] provisions in G. L. c. 152, § 37 (§ 37), as amended by St. 1985, c. 572, §§ 48, 49 (1985 Act).[4] As the court points out, "[t]he interpretation of a statute by the agency charged with primary responsibility for administering it is entitled to substantial deference." *Ante* at 173, quoting *Gateley's Case*, 415 Mass. 397, 399 (1993). However, we have often noted that "this principle is one of deference, not abdication," *Leopold-stadt, Inc. v. Commissioner of the Div. of Health Care Fin. & Policy*, 436 Mass. 80, 91 (2002), quoting *Protective Life Ins.*

---

[3]See *Daly v. Commonwealth*, 29 Mass. App. Ct. 100, 101 (1990). See also *American Mut. Liab. Ins. Co. v. Commonwealth*, 379 Mass. 398, 398-399 (1979).

[4]The statutory provisions governing compensation and reimbursement for second injuries are set out in G. L. c. 152, §§ 37 (§ 37) and 65, first enacted in 1919, St. 1919, c. 272, §§ 1, 2, and amended in a number of respects both before and after the 1985 amendment to § 37 (1985 Act). In particular, as discussed in the court's opinion, *ante* at 172, § 37 was substantially amended in 1991. See St. 1991, c. 398, § 71. Since its inception, the Second Injury Fund was intended "to encourage the employment of previously injured persons by providing a fund which would pay a portion of the compensation burden that would result should the employee suffer a further injury. It might be anticipated that the subsequent injury, compounded with the previous one, would often lead to more serious disability." *Daly v. Commonwealth*, 29 Mass. App. Ct. at 101-102. See *American Mut. Liab. Ins. Co. v. Commonwealth*, 379 Mass. at 402; *McLean's Case*, 326 Mass. 72, 74 (1950).

As part of the 1985 revisions to G. L. c. 152, the Second Injury Fund was replaced by the Workers' Compensation Trust Fund (Fund), the appellant in this case, which has a number of additional functions unrelated to second injuries; in contrast to the old Second Injury Fund, the newer Fund draws its contributions from employers rather than from insurers. See G. L. c. 152, § 65 (2), as appearing in St. 1985, c. 572, § 55; *Daly v. Commonwealth*, 29 Mass. App. Ct. at 102-105.

*Co.* v. *Sullivan*, 425 Mass. 615, 618 (1997), and that "[t]he duty of statutory interpretation is for the courts." *Slater's Case*, 55 Mass. App. Ct. 326, 330 (2002), quoting *Police Comm'r of Boston* v. *Cecil*, 431 Mass. 410, 413 (2000). See *Walker's Case*, 443 Mass. 157, 160-170 (2004) (reversing board's interpretation of 1981 amendment to G. L. c. 152 based on court's examination of legislative history and intent); *Police Comm'r of Boston* v. *Cecil, supra* at 413-416 (vacating motion judge's acceptance of administrative agency's statutory interpretation as "not unreasonable," and adopting alternate interpretation). I believe that in this case, that duty requires us to overrule the board's conclusion that claims for reimbursement brought under § 37, as amended by the 1985 Act, are subject to no statute of limitations.

While a core principle of administrative law mandates that we "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it," G. L. c. 30A, § 14 (7), judicial deference to agency action is most appropriate when the agency acts on the basis of its technical or policy expertise, and least appropriate when the agency ventures into the courts' own "traditional area of expertise." *Natural Resources Defense Council, Inc.* v. *Securities & Exch. Comm'n*, 606 F.2d 1031, 1045 (D.C. Cir. 1979). See 5 K.C. Davis, Administrative Law § 29:3 (2d ed. 1984) (scope of review of agency action should vary according to courts' and agencies' comparative qualifications). The question at the center of this case is whether, in amending § 37 in 1985 without expressly adding a limitations period, the Legislature intended to give insurers an unlimited period of time in which to file petitions for reimbursement of compensation paid to employees who had suffered a second injury. Discerning legislative intent about a limitations period presents an issue of statutory interpretation with which courts are amply familiar, and one that courts, rather than administrative agencies, are traditionally called on to address.

The court in this case defers to the board's decision in *Walsh* v. *Bertolino Beef Co.*, 16 Mass. Workers' Comp. Rep. 151 (2002) (*Walsh*), apparently the first administrative appeal in which the board interpreted the 1985 Act to provide employers paying compensation to employees suffering a second injury

between 1985 and 1991 (referred to by the parties as "Mid-Act" claims) an unlimited time to seek reimbursement from the Workers' Compensation Trust Fund (Fund). In reaching this result, the board drew on no arguments related to the policies or experiences of the department in enforcing or administering the Workers' Compensation Act,[5] and gave no indication that the department had been involved in the drafting of either the 1985 Act or the later revision of § 37 enacted in 1991, St. 1991, c. 398, § 71 (1991 Act). Cf. *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 491-492 (1978) (weight should be given to reasonable construction of regulatory statute adopted by agency responsible for its enforcement where [as in that case] statute gave agency broad power to fill in administrative details and agency participated in drafting legislation). Cf. also *Falmouth* v. *Civil Serv. Comm'n*, 447 Mass. 814, 821-822 & n.10 (2006) (deferring to agency's statutory interpretation where it had promulgated rule pursuant to specifically delegated authority).[6] In this context, then, a searching judicial review of the board's legal conclusions is appropriate.

---

[5]The court posits that "the board's interpretation is in keeping with the purpose of § 37 (facilitating the rehiring of injured workers) by making sure that insurers are reimbursed." *Ante* at 179. While an agency's policy determinations regarding how best to effectuate a statute's purpose are appropriately accorded considerable deference, see, e.g., *Leopoldstadt, Inc.* v. *Commissioner of the Div. of Health Care Fin. & Policy*, 436 Mass. 80, 92 (2002) ("division's decision . . . is a reasonable interpretation of the statute and one that accomplishes its purpose"), the board did not in fact present this reasoning as a basis for its decision in *Walsh* v. *Bertolino Beef Co.*, 16 Mass. Workers' Comp. Rep. 151 (2002), or in either of the cases we decide today. Moreover, the court's theoretical rationale falls flat because the same legislative purpose that animated § 37 when the 1985 Act was passed (see note 4, *supra*) presumably continues to do so after passage of the 1991 Act with its explicit two-year statute of limitations. If the Legislature considered a limitations period on reimbursement claims to be consistent with the statutory purpose in 1991, it is difficult to see why the same would not have been true in 1985.

[6]At issue in *Falmouth* v. *Civil Serv. Comm'n*, 447 Mass. 814 (2006), was whether G. L. c. 31, § 2 (*g*), a statute authorizing the Civil Service Commission (commission) to promulgate procedural rules for the conduct of its adjudicatory proceedings, permitted the commission to adopt a so-called postmark rule for initial filings by aggrieved employees to commence appeals to the commission. The court concluded that the relevant portion of the statute governing the filing of appeals to the commission, G. L. c. 31, § 43, was ambiguous, and deferred to the agency's reasonable interpretation (in its rule) of the unclear phrase. *Id.* at 821-822. In doing so, the court rejected the

2. *Interpretation of the 1985 Act.* There is no dispute that § 37, as amended by the 1985 Act, did not contain any language that operated as a statute of limitations on insurers' claims for second injury compensation reimbursement.[7] This court has consistently adhered to the principle that "[w]here, as here, the statute does not make reference to any period of limitations, we must inquire whether there is anything in the statute or its legislative history that indicates an express or implied legislative intent that [the actions permitted or required by the statute] are not time limited." *State Bd. of Retirement* v. *Woodward,* 446 Mass. 698, 707 (2006).[8] See *Nantucket* v. *Beinecke,* 379 Mass. 345, 348 (1979) ("We find nothing in the legislative history of

plaintiff town's argument that "because the [agency's] expertise does not extend to timeliness, filing, and jurisdiction . . . deference is unwarranted." *Id.* at 821 n.10. It noted that a reviewing judge (or court) is to follow a standard that gives "due weight to the *experience,* technical competence, and specialized knowledge of the agency," and concluded that "[w]hereas [such procedural matters] may not be within the specialized knowledge of the commission, there can be little doubt of its experience as an adjudicatory body." *Id.,* quoting *Brackett* v. *Civil Serv. Comm'n,* 447 Mass. 233, 241-242 (2006). The court then went on to state, "Regardless, we also defer to the [agency's] interpretation of the statute in light of the discretionary authority conferred on it [to adopt rules of procedure for the conduct of its proceedings]." *Falmouth* v. *Civil Serv. Comm'n, supra* at 822 n. 10.

I do not read this language to suggest that any agency with adjudicatory experience is entitled to great deference on all procedural questions related to the time in which petitions may be filed. More to the point, however, the holding in the *Falmouth* case is not determinative of the instant case, because, unlike the regulation under review there, the board's action here is not a rule promulgated pursuant to a specific delegation of discretionary authority but rather a direct interpretation of legislative history and intent — an area traditionally entrusted to the courts.

[7]Section 37 did not contain any limitations period on reimbursement claims before passage of the 1985 Act, either. See, e.g., St. 1973, c. 855, § 2. However, there is nothing in the records of these cases or in the arguments of the parties that sheds any light on how claims for reimbursement were treated under the earlier versions of § 37. Thus, we have no information whether — as was true for much of the period between 1985 and 1991 (a point discussed in note 10, *infra*) — there were administrative rules, regulations, or policies in place that prescribed a specific period of time in which reimbursement claims could be filed, or whether the issue of a limitations period was ever raised by anyone. Accordingly, I agree with the implicit conclusion of the court and the parties that the only relevant time periods to consider in this case are the "Mid-Act" period from 1985 to 1991, which is governed by the 1985 Act, and the "New Act" period after 1991, which is governed by the 1991 Act.

[8]The court repeatedly characterizes the Fund's argument to be that courts

G. L. c. 268A, § 21, which would suggest that the Legislature, by not specifically prescribing a period of time within which an action under § 21 must be brought, intended that actions not be time-limited. If such a result had been intended, it would have been natural for the Legislature to express such an intention"). Accord *Locator Servs. Group, Ltd.* v. *Treasurer & Receiver Gen.*, 443 Mass. 837, 858-859 (2005) (borrowing analogous statute of limitations after finding no evidence that "the Legislature intended to permit actions seeking additional interest payments under [G. L. c. 79,] § 7D, and brought under [G. L. c. 79,] § 10A, to be filed indefinitely after an alleged breach").[9]

It is thus necessary to focus on the language and any available legislative history of the 1985 Act to determine whether in amending § 37 at that time, the Legislature did intend that there be no time limit on an insurer's right to claim reimbursement. However, the court in the present case does not take on this task itself, but rather defers to the analysis of language and legislative history offered by the board in its *Walsh* decision. *Ante* at 175-177. I therefore consider the board's decision. The board posited two sources of what it considered clear expressions of a legislative intent to have no limitations period apply to insurers' § 37 reimbursement claims that are governed by the 1985 Act: the 1991 Legislature's decision to make the statute of limitations it added to § 37 in the 1991 Act prospective only, and the fact that G. L. c. 152, as amended by the 1985 Act, includes specific statutes of limitations in some sections but not in § 37. The court calls the board's interpretation "not unreasonable." *Ante* at 178. I respectfully disagree.

---

*always* borrow a statute of limitations when a statute does not include one. *Ante* at 174, 177. The Fund has not made such a claim. Its consolidated brief appropriately points out that where a statute does not contain a specific limitations period, the court will seek to discern the legislative intent of the statute, and absent a clear expression in the statutory language or indication in the legislative history that the Legislature intended no limitations period, the court will seek to borrow a statute of limitations from an analogous statute. See, e.g., *State Bd. of Retirement* v. *Woodward*, 446 Mass. 698, 707-708 (2006).

[9]The court's citation of two cases, *State Bd. of Retirement* v. *Woodward*, 446 Mass. at 708, and *O'Brien* v. *Massachusetts Bay Transp. Auth.*, 405 Mass. 439, 445 (1989), in which we in fact did find a clear expression of legislative intent to apply no statute of limitations and therefore declined to borrow one, *ante* at 174-175, does not serve to undermine the consistency of this rule.

In the *Walsh* case, the board distinguished *Nantucket* v. *Beinecke*, 379 Mass. 345 (1979), by relying on the action of the 1991 Legislature as an expression of legislative intent relevant to the 1985 Act. See *Walsh*, 16 Mass. Workers' Comp. Rep. at 153 ("Unlike [*Nantucket*], where no express legislative intent addressed time limitations, here the Legislature did, in fact, express just such intent when it amended § 37 in 1991"). In the board's view, by designating the 1991 Act's revision of § 37 prospective only, the Legislature expressed its intention that claims for reimbursement arising under the 1985 Act should not be time limited. *Id.* The problem with this inference is that "[t]he views of a subsequent [Legislature] form a hazardous basis for inferring the intent of an earlier one." *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 194 (1976), quoting *United States* v. *Price*, 361 U.S. 304, 313 (1960). See *Massachusetts Wholesalers of Malt Beverages, Inc.* v. *Attorney Gen.*, 409 Mass. 336, 344 (1991), quoting *Coca Cola Bottling Co.* v. *Commissioner of Revenue*, 393 Mass. 726, 729 n.3 (1985) ("What the . . . legislation involved in this case means cannot rationally be influenced by [subsequent] legislation"); *Massachusetts* v. *Environmental Protection Agency*, 127 S. Ct. 1438, 1460 n.27 (2007), quoting *Cobell* v. *Norton*, 428 F.3d 1070, 1075 (D.C. Cir. 2005) ("[P]ost-enactment legislative history is not only oxymoronic but inherently entitled to little weight").

Certainly it was within the power of the 1991 Legislature to declare that *from that time forward* there would be no statute of limitations applicable to insurers' reimbursement claims for second injuries that had occurred between 1985 and 1991 — as opposed to changing the intent of the 1985 Legislature itself. However, in order for us to conclude that the 1991 Legislature adopted this position, we must find that intent to be clearly expressed. *Nantucket* v. *Beinecke*, 379 Mass. at 348 ("If such a result had been intended, it would have been natural for the Legislature to express such an intention"). It is true that the 1991 Legislature did choose to make all its amendments to § 37, including the two-year limitations period on claims, prospective in operation and therefore applicable only to reimbursement claims for second injuries occurring after December 23,

1991, the effective date of the 1991 Act. However, in contrast to the board, I do not discern in this choice any clear intention to prescribe that cases governed by the 1985 Act should have no limitations period applied to them at all. The language of the 1991 Act does not expressly address the 1985 Act or claims falling under it. As for legislative history concerning the 1991 Act, neither the board, the court, nor the parties refer to any that might provide guidance on this issue, and I have found none.[10]

The board, in quoting the decision of the administrative judge, also purported to find an expression of legislative intent in the fact that G. L. c. 152, as amended by the 1985 Act, "contains explicit language limiting the period for which certain benefits

[10]In the circumstances, the board and this court are essentially left to conjecture as to the motivation of the 1991 Legislature in making the limitations period prospective, and there are explanations available that seem equally if not more plausible than the one selected by the board. For example, the Legislature may have made the limitations provision in § 37 prospective only simply because it was part of a complete rewriting of the section that implemented several substantive changes that the Legislature did not wish to have applied retroactively. These substantive changes included altering the reimbursement provided from "an amount equal to seventy-five per cent" to "an amount not to exceed seventy-five percent"; cutting back on the categories of compensation eligible for reimbursement; excluding from reimbursement eligibility self-insurers and municipalities that opt out of contribution to the Fund; and adding a requirement of personal knowledge on the part of the employer of the employee's preexisting impairment. Compare St. 1973, c. 855, § 2, with St. 1985, c. 572, §§ 48, 49, and St. 1991, c. 398, § 71. Cf. *American Mut. Liab. Ins. Co.* v. *Commonwealth*, 379 Mass. 398, 404 (1979) (1973 amendment to § 37 to extend coverage to additional injuries was substantive and would have been applied prospectively absent separate statutory provision designating change retroactive); *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914) (presumption of prospective application for statutes affecting substantive rights).

Moreover, although the board and the court do not address the point, at least as of 1988 and extending through 1991, the Department of Industrial Accidents, as the principal agency administering the workers' compensation system in Massachusetts, had in place a regulation specifically prescribing a rolling two-year limitations period for the filing of requests for reimbursement pursuant to § 37. See 452 Code Mass. Regs. § 3.07(3) (1988). (The text of this regulation changed thereafter, but it is clear that at least through 1991, it imposed the two-year limitations period.) It is appropriate to presume that the Legislature in 1991 was aware of this regulatory provision and may therefore have deemed retroactive application of the new statute of limitations unnecessary. See, e.g., *Falmouth* v. *Civil Serv. Comm'n*, 447 Mass. 814, 820 n.8 (2006).

shall be paid, limitations on when various notices must be filed by employers and insurers, and also contains limitations on the time within which certain claims for benefits must be filed," and yet fails to specify a limit on the time for an insurer or self-insurer to claim reimbursement under § 37. *Walsh*, 16 Mass. Workers' Comp. Rep. at 152. From this distinction, the board concluded that "the Legislature included specific limitations where it wanted them to be applied — and conversely, excluded them where it did not want limitations to apply." *Id.* However, the "inclusion of a [statute of limitations] elsewhere in the statute . . . does not necessarily indicate that the Legislature intended that there be no limitations period for claims" arising under § 37. *Locator Servs. Group, Ltd.* v. *Treasurer & Receiver Gen.*, 443 Mass. 837, 859 (2005).[11] Additionally, the fact that the department currently has in place regulations specifying statutes of limitations for sections of G. L. c. 152 that fail to provide time limits undermines the board's argument that causes of action without a limit in the statute should be treated as having none. See, e.g., 452 Code Mass. Regs. § 3.03(3) (1999) (imposing two-year statute of limitations on requests for reimbursement of cost of living adjustments pursuant to G. L. c. 152,

---

[11]In *Locator Servs. Group, Ltd.* v. *Treasurer & Receiver Gen.*, 443 Mass. 837, 859 (2005), the court borrowed a statute of limitations for a statutory cause of action that failed to specify one. The statute at issue, G. L. c. 79, specifically included three-year limitations periods in other sections. In referring to this distinction, the court said: "The inclusion of a three-year limitations period elsewhere in the statute . . . does not necessarily indicate that the Legislature intended that there be no limitations period for claims alleging additional interest owed under [G. L. c. 79,] § 7D. To the contrary, to construe § 7D as imposing no limitations period at all on these claims, where the remainder of the statute contains limitations periods, would violate the well-settled canon of statutory interpretation that, where possible, we construe the various provisions of a statute in harmony with one another." *Id.*

The court further pointed out that "it would be illogical to apply a strict three-year statute of limitations period to bar a claimant from seeking her underlying award for a taking . . . while allowing that same claimant an indefinite period of time in which to file an action for additional interest on the Treasurer's investment of that award." *Id.* While the board is correct in noting that an employee's right to compensation following an injury is separate from the insurer's right to reimbursement for that compensation, it seems similarly illogical to apply a strict statute of limitations to the underlying claim but allow insurers (in "Mid-Act" cases only) an unlimited time in which to seek reimbursement.

§ 65 [2] [*a*] or [*b*]). Therefore, I conclude that the board also erred in reading the contrast among various sections of G. L. c. 152 as a clear indication of legislative intent that insurers' right to seek reimbursement under § 37 for "Mid-Act" claims should last indefinitely.

Statutes of limitations provide many well-recognized benefits for the administration of justice, including allowance for "the temporal finality necessary for the orderly conduct of human affairs," *Doe* v. *Harbor Sch., Inc.*, 446 Mass. 245, 256 (2006), and "suppress[ing] fraudulent and stale claims." *Joslyn* v. *Chang*, 445 Mass. 344, 351 (2005), quoting *Spring* v. *Gray*, 22 F. Cas. 978, 984-985 (C.C.D. Me. 1830), aff'd, 31 U.S. (6 Pet.) 151 (1832). While we would certainly be bound to respect the Legislature's choice to impose no statute of limitations if it were clearly expressed,[12] I believe the lack of any such expression in this case stems from the fact that the Legislature actually entertained no such intent.

Because the Legislature has not clearly expressed an intent that reimbursement claims arising under the 1985 Act should be subject to no time limitation, it is our interpretive duty to look to the essence of the claim and identify an appropriate limit to apply.[13] See *State Bd. of Retirement* v. *Woodward*, 446 Mass. at 707 (where evidence of legislative intent to have no limitations period is absent, "we look to the nature of the claim to determine which existing statute of limitation most closely is associated with the asserted claim"); *Nantucket* v. *Beinecke*, 379 Mass. 345, 348 (1979) (same). It was error for the board to conclude otherwise, and, I believe, the court is mistaken in deferring to and accepting the board's analysis. I respectfully dissent.

---

[12]See, e.g., *State Bd. of Retirement* v. *Woodward*, 446 Mass. 698, 708 (2006) (finding statutory directive that "*[i]n no event* shall any member after final conviction . . . be entitled to receive a retirement allowance" to be clear expression of legislative intent that proceedings to forfeit retirement benefits could be commenced at any time).

[13]Because the nature of the claim here is one seeking reimbursement from a special revenue fund in the State treasury, G. L. c. 152, § 65 (2), I believe an appropriate time limit may be borrowed from G. L. c. 260, § 3A, which imposes a three-year statute of limitations on claims against the Commonwealth.