Quinlan, Regina L., J.
The plaintiff, Laura M. O’Brien, filed this appeal, pursuant to G.L.c. 30A, § 14, from a decision of the Board of Hearings of the Office of Medicaid (“the Agency”), upholding a decision of MassHealth that denied O’Brien’s application for benefits due to a disqualifying transfer of assets. In essence, Mrs. O’Brien argues that the transfer at issue created a private annuity that is proper under applicable MassHealth regulations. She contends that the Agency’s decision was based on an error of law, unsupported by substantial evidence, arbitrary and capricious, and an abuse of discretion. Mrs. O’Brien has moved for judgment on the pleadings. For the following reasons, the plaintiffs Motion for Judgment on the Pleadings is ALLOWED and the defendant Agency’s decision is reversed. Judgment shall enter in favor of the plaintiff.
BACKGROUND
The following facts are taken from the administrative record. The plaintiff, Laura M. O’Brien (“Mrs. O’Brien”), is an elderly woman who was admitted to Colonial Rehabilitation and Nursing Center on March 14, 2008. Mrs. O’Brien has been married to Leo T. O’Brien (“Mr. O’Brien”) at all relevant times. On June 3, 2008, Mr. O’Brien, as donor, established the Mr. Leo T. O’Brien Irrevocable Trust (“Trust”). The Trust is irrevocable, not subject to amendment or alteration, and nothing in it gives Mrs. O’Brien or Mr. O’Brien the authority to request or obtain distributions of income or principal. The O’Briens’ daughters, Lisa J. Lenzi and Karen L. Curran, are trustees and beneficiaries of the Trust. When established on June 3, 2008, the Trust was funded with $10. On June 9, 2008, Mr. O’Brien entered into an agreement with Lenzi and Curran, who were acting as trustees of the Trust. The agreement, entitled Immediate and Irrevocable Private Annuity Agreement (“Annuity”), named Mr. O’Brien as annuitant and Lenzi and Curran as obligors.
Under the Annuity, Mr. O’Brien sold the trustees-obligors a number of life insurance policies and an investment account. The total value of the insurance policies and investment account was $594,595.92. In exchange, the trustees-obligors promised to pay Mr. O’Brien $25,270.33 each month for two years, beginning on July 30, 2008. In total, the pay-outs to Mr. O’Brien would amount to approximately $606,000. The Annuity also provides that upon Mr. O’Brien’s death, the annuity payments “shall be made to the designated beneficiaries.” The Annuity states that “(t]he designated beneficiary shall be the Commonwealth of Massachusetts in the first position for at least the total amount of medical assistance paid on behalf of Mrs. O’Brien, otherwise to the issue of [Mr. O’Brien) by right of representation.” Finally, the Annuity provides that the obligors’ promise to pay is “totally unsecured,” and that Mr. O’Brien “retains no security interest, encumbrance, lien or pledge with respect to the Property transferred ...”
On August 19, 2008, Mrs. O’Brien applied for Mass-Health long-term care benefits, seeking eligibility as of June 10, 2008. In a notice dated December 8, 2008, MassHealth denied Mrs. O’Brien’s application because it deemed Mr. O’Brien’s transfer of $594,595.92 a disqualifying transfer of assets. Mrs. O’Brien timely appealed the denial, and the Board of Hearings held a hearing on March 2, 2009. The Agency denied Mrs. O’Brien’s appeal in a final decision issued May 26, 2009. Mrs. O’Brien then filed a Complaint for Judicial Review. Because the Board of Hearings was unable to *589 produce a transcript of the March 2, 2009 hearing, this court remanded the matter to the Board of Hearings for another hearing on the merits. That hearing was held on March 8, 2010. On July 2, 2010, the Agency denied Mrs. O’Brien’s appeal. Mrs. O’Brien appealed that decision to this court, and the case is now before the court on Mrs. O’Brien’s Motion for Judgment on the Pleadings.
STANDARD OF REVIEW
The scope of review of an agency’s decision is defined by G.L.c. 30A, § 14. A court may “either affirm, remand, set aside or modify an Agency’s decision . . . if it determines that the substantial rights of any party may have been prejudiced because the Agency’s decision is (a) in violation of constitutional provisions; or (b) in excess of the authority or jurisdiction of the Agency; or (c) based upon an error of law; or (d) made upon unlawful procedure; or (e) unsupported by substantial evidence; or (f) unwarranted by the facts found by the court on the record as submitted ... or (g) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law.” G.L.c. 30A, §14; see Howard Johnson Co. v. Alcoholic Beverage Control Comm’n, 24 Mass.App.Ct. 487, 490 (1987). Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). As the party appealing the administrative decision, Mrs. O’Brien bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies and Bds., 27 Mass.App.Ct. 470, 474 (1989).
In reviewing an agency’s decision the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester Cnty. Reg’l Vocational Sch. Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982). The court may not dispute the administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Id., at 420. The court does not act as a de novo finder of fact, nor is the review a trial de novo on the record that was before the agency. Id.
DISCUSSION
The sole issue before the court is whether MassH-ealth was correct when it determined that the transfer of $594,595.92 to the Trust was a disqualifying transfer. MassHealth “considers any transfer during the appropriate look-back period by the nursing-facility resident or spouse of a resource, or interest in a resource, owned by or available to the nursing-facility resident or the spouse . . . for less than fair-market value a disqualifying transfer” unless it is listed as permissible or exempted in the Code of Massachusetts Regulations. 130 Code Mass. Regs. 520.019(c). Mass-Health “may consider as a disqualifying transfer any action taken to avoid receiving a resource to which the nursing-facility resident or spouse would [otherwise] be entitled . . .” Id. “A disqualifying transfer may include any action taken that would result in making a formerly available asset no longer available.” Id. Mass-Health will not impose a period of ineligibility for a transfer of resources at less than fair-market value if the resident or spouse “demonstrates to [MassH-ealthfs satisfaction that. . . the resources were transferred exclusively for a purpose other than to qualify for MassHealth . . .” 130 Code Mass. Regs. 520.019(F)(1).
MassHealth argues, and the hearing officer concluded, that Mr. O’Brien’s transfer to the Trust was disqualifying because it was for less than fair-market value and was made for the sole purpose of qualifying for long-term care benefits for Mrs. O’Brien. Mrs. O’Brien contends that Agency’s conclusion was an error of law because under the applicable MassHealth regulations, annuities, whether commercial or private, are not disqualifying transfers. She cites two provisions, 130 Code Mass. Regs. 520.007(J)(l)-(2), that she says demonstrate the validity of the Annuity. The first, 130 Code Mass. Regs. 520.007(J)(2), provides:
(2) Treatment of Annuities Established on or after February 8, 2006. In addition to the requirements in 130 CMR520.007(J)(1), the following conditions must be met.
(a) The purchase of an annuily will be considered as a disqualifying transfer of assets unless
1. the Commonwealth of Massachusetts is named as the remainder beneficiary in the first position for at least the total amount of medical assistance paid on behalf of the institutionalized individual;
2. the Commonwealth of Massachusetts is named as such a remainder beneficiary in the second position after the community spouse, or minor or disabled children; or
3. the Commonwealth of Massachusetts is named as such a remainder beneficiary in the first position if the community spouse or the representative of any minor or disabled children in 130 CMR 520.007(J)(2)(a)2 disposes of any such remainder for less than fair market value.
(b) The purchase of an annuity is considered a disqualifying transfer of assets unless the annuity satisfies 130 CMR 520.007(J)(2)(b), or unless the annuity names the Commonwealth of Massachusetts as a beneficiary as required under 130 CMR 520.007(J)(2)(a) and the annuity is
1. described in Section 408(b) or (q) of the Internal Revenue Code of 1986;
2. purchased with the proceeds from an account or trust described in Section 408(a), (c), or (p) of the Internal Revenue Code of 1986;
*590 3. purchased with the proceeds from an account or trust described in Section 408(a), (c), or (p) of the Internal Revenue Code of 1986; or
4. purchased with the proceeds from a Roth IRA described in Section 408A of the Internal Revenue Code of 1986.
The transfer must also satisfy 130 Code Mass. Regs. 520.007(J)(1) which provides:
(1) Treatment of Annuities Established Before February 8, 2006. Payments from an annuity are countable income in accordance with 130 CMR 520.009. If the annuity can be converted into a lump sum, the lump sum, less any penalties or costs of converting to a lump sum, is a countable asset. Purchase of an annuity is a disqualifying transfer of assets for nursing-facility residents as defined at 130 CMR 515.001 in the following situations:
(a) when the beneficiary is other than the applicant, member, or spouse;
(b) when the beneficiary is the applicant, member, or spouse and when the total projected payments from the annuity is less than the value of the transferred asset (purchase price). In this case, the MassHealth agency determines the amount of the disqualifying transfer based on the actuarial value of the annuity compared to the beneficiary’s life expectancy using the life-expectancy tables as determined by the MassH-ealth agency, giving due weight to the life-expectancy tables of institutions in the business of providing annuities;
(c) when the terms of the annuity postpone payment beyond 60 days, the MassHealth agency will treat the annuity as a disqualifying transfer of assets until the payment start date; or
(d) when the terms of the annuity provide for unequal payments, the MassHealth agency may treat the annuity as a disqualifying transfer of assets. Commercial annuity payments that vary solely as a result of a variable rate of interest are not considered unequal payments under 130 CMR 520.007(J)(l)(d).
The plaintiff maintains that the Annuity satisfies the requirements of both of these two provisions. First, Mrs. O’Brien contends that the requirements of 520.007(J)(2) are met because the Annuity is irrevocable, nonassignable, and the Commonwealth of Massachusetts is named as beneficiary in the first position for at least the total amount of medical assistance paid on Mrs. O’Brien’s behalf. Moreover, Mrs. O’Brien points out that nothing in MassHealth’s regulations, internal memoranda, or previous Hearing Board decisions mandates that only commercial annuities, rather than private annuities like the one at issue here, are acceptable. She also cites two Superior Court cases holding that a transfer is not automatically disqualifying merely because it is between family members. See Cuddemi v. Dehner, ESCV2007-02177C (Mass.Super. 2010); Clark v. Dehner, MICV2008-02427 (Mass.Super. 2009). Second, she argues that 130 Code Mass. Regs. 520.007(J)(1) is satisfied because the Annuity cannot be converted into a lump sum; her spouse is the beneficiary; the total present value of the projected payments exceeds the purchase price; the terms do not postpone payment beyond sixty days; and it provides for equal payments.
The hearing officer conceded that the Annuity here is not automatically disqualifying because it was between family members. However, the hearing officer reasoned that, “(g]iven the proximity of dates between the . . . creation of the trust, the annuity and the MassHealth request date, June 3, 9, and 10, 2008 respectively, it is quite apparent that [Mr. O’Brien was] trying to preserve assets for his children while obtaining MassHealth eligibility for [Mrs. O’Brien].” Once Mrs. O’Brien obtained MassHealth benefits, there would be no reason to believe Mr. O’Brien would seek enforcement of the Annuity, as the goal of the couple and their children would then be achieved. The hearing officer went on to point out that the goals of the O’Briens and their daughters differ from those of a purchaser of an annuity and a company that does business in selling annuities.
Thus, the hearing officer’s decision was rooted in his interpretation, based on the administrative record, of the couple’s intent in establishing the Annuity. “Once MassHealth is obtained, there is no reason to believe that the couple would seek, if they were able, enforcement of the annuity. Their objectives, (identical to the objectives of their children one might add), would be achieved.” [Remand Appeal Decision, p. 7.] Mrs. O’Brien strenuously argues that intent is not a factor in determining whether a transfer is disqualifying. This argument oversimplifies the applicable regulations. See Normand v. Director of Office of Medicaid, 77 Mass.App.Ct. 634, 644 (2010).
The hearing officer noted 30 Code Mass. Regs. 520.007(J)(4), which provides that “[a]ny transaction that involves a promise to provide future payments or services to an applicant, member, or spouse, including but not limited to transactions purporting to be annuities ... is considered to be a disqualifying transfer of assets to the extent that the transaction does not have an ascertainable fair-market value or if the transaction is not embodied in a valid contract that is legally and reasonably enforceable by the applicant, member or spouse.” 30 Code Mass. Regs. 520.007(J)(4) (emphasis added). “This provision applies to all future performance whether or not some payments have been made or services performed.” Id.
The hearing officer considered the Annuity not “reasonably enforceable” because the obligors would have no reason to enforce it after Mrs. O’Brien receives long-term care benefits. In doing so, the hearing officer *591 ignored the express terms of the annuity contract, particularly Section 4 concerning default which provides in part:
In the event of occurrence of any one or more of the following events of default with respect to the undersigned . . . namely: the failure of the undersigned to pay any amount due hereunder upon the due date thereof and within 15 days after notice of such default; declaration of insolvency; assignment for the benefit of creditors; appointment of a receiver or filing of a petition in bankruptcy or under any insolvency law, then, all amounts payable on this agreement shall become immediately due and payable without demand or notice of any kind.
Section 4 further provides for recovery of costs and attorneys fees in the event of a dispute. The annuity contract by its express terms is legally and reasonably enforceable. To disregard the express terms of the annuity agreement would render any contract involving family members or any private annuity a disqualifying transfer regardless of compliance with the provisions of 130 Code Mass. Regs. 520.007(J)(l)-(2). That is an error of law and arbitrary and capricious and not supported by substantial evidence. See Clark v. Dehner, MICV 08-02427 pp. 10-11 (Murtagh, J.).
In addition, the defendant argues that the annuity fails to satisfy the MassHealth requirement that it have fair-market value, see 130 Code Mass. Regs. 520.019(c), because there was no evidence that there was an available market for the transferred assets. The regulations do not require that there be an open market for a private annuity. That the Annuity here is meaningful only to the members of the plaintiffs family, would not be of interest to an entity that handles commercial annuities, and likely does not mean that it has not value. See 130 Code Mass. Regs. 515.001 (“Fair-Market Value—an estimate of the value of a resource if sold at the prevailing price. For transferred resources, the fair-market value is based on the prevailing price at the time of transfer”); see also Olsofsky v. Office of Medicaid, MICV2008-01799, slip op. at 6 (Mass.Super. 2009) (holding that purported annuity had no fair-market value because it was unsecured, had no fixed term, and could be discharged at any time). The professional valuation of the Annuity submitted by the plaintiff demonstrates that the annuity as a resource has avalué. Not referring to that value as “fair market value” is not and should not be fatal to a finding of the same.
“[Jjudicial deference to agency action is most appropriate when the agency acts on the basis of its own technical or policy expertise ...” Alves’s Case, 451 Mass. 171, 182 (2008). Here, the Agency’s decision was grounded in an area well within its expertise. However, it was also based on an error of law and was arbitrary and capricious.
ORDER
For the reasons stated herein, the decision of the Board of Hearings, Office of Medicaid, upholding the decision of MassHealth denying Mrs. O’Brien’s application for long-term care benefits is VACATED. The Plaintiffs Motion for Judgment on the Pleadings is ALLOWED. Judgment shall enter in favor of the plaintiff.